Our third case of the day is Darryl Howard against the City of Durham. Two consolidated appeals, number 22-1684 and 22-1719. Ms. Hoffman, good to have you with us, Ms. Hoffman. Thank you. May it please the court, I represent Plaintiff Darryl Howard. The District Court erred in deciding factual questions adverse to the plaintiff and in thus improperly dismissed claims against Penica, Susie and the City of Durham. In 2011, there was an extraordinary development in this case. DNA implicated a new suspect, Jermack Jones, in the murders for which the Durham Police Department had helped put Darryl Howard in prison. Scott Penica, the sergeant in charge of homicide, reads up about the case. He meets with his supervisors and he expresses his concerns about potential liability for the Durham Police Department. He then participates in an interview of the suspect, Jermack Jones, which is rare for him as a supervisor. He tries to feed Jones an innocent explanation for the presence of his DNA This is a cross-appeal, so various issues are coming from both sides. The way in which you postulate the case, it looks like the counsel divided themselves up. A lot of times when we do that, what happens is it gets lost in the process. Who's arguing against what? So, outline to us what we're about to hear today and what you anticipate is going to come. If you can, you don't have to do that side, just yours. So, there's three issues that we're raising here. Two are about the dismissal of other parties at summary judgment. Penica and Susie, who are individual investigators, and then the city of Durham itself. And the third issue is about error at the trial that infected the damages award. And the reason that all of this is significant is because, as noted in the papers, Durham is contesting its obligation to indemnify the individual officer. And so, it's unclear whether they will pay the verdict against Dowdy. There's litigation ongoing about that, which is separate from this. And so, holding additional people responsible is necessary to collect. And there's also a question about the size of the error in the express propensity argument made at the trial and character that infected the damages verdict. So, you're appealing the verdict of six million dollars? We're appealing the dismissal of two additional parties or sets of parties. I heard that part, but I'm starting at the bottom now. Yes. You're actually appealing the jury verdict? We are. We are asking for a new damages only trial. So, you've given up that amount of money. You want to start all over and want more? Well, yes. But you don't want to give up your liability determination? Because the error in this case, there's no error that infected the liability determination. So, the jury found within a few hours... Why is that necessarily true? Is some of the evidence that you challenge in relation to the officers did and knew that justified their charge against your client initially, and that were used in the prosecution of him. So, it seems a little difficult to me to just automatically say, all this evidence related only to damages and not to liability at all. That seems like an error in how trials actually work. Well, first, if there was error, the error was against the plaintiff. So, if the plaintiff then won, there's no indication that it didn't have an effect. It was harmless to the extent it would have had an impact on liability. But also here, the issue is not solely the introduction of evidence, although we believe that there was extensive evidence introduced improperly. There's an express argument made during closing, opening and closing, that this is a propensity, an express propensity and an express character argument, which is completely contrary to the federal rules. And so, this is exactly what this court said you cannot do in COPS v. SCRM. It's much more blatant than what this court reversed for in Smith. In Smith v. Baltimore City Police Department, there was an implication based on a question that was asked about, this isn't your first rodeo. One question about prior arrests that the jury might have interpreted that as propensity or they said the quiet part out loud here. There's no implication. They expressly said to both the court and to the jury that the damages should be lower because of who this man is and the choices he made. Expressly said to the court, the argument was, he might have been wrongly convicted in this case, but he would have done something else. He would have been in prison anyway. That is a blatantly improper argument. It should not have been permitted. The court recognized it was improper and did nothing to address it. Was there any objection to the Was there an objection to the arguments you made at the time it was made? Yes, and we went to sidebar. And they were overruled? No, the court stopped, but he didn't instruct the jury in any way that there was anything improper to disregard it. Did you ask for an instruction in any way? I believe we asked for it, yes, throughout. We'd asked for, and we flagged this. Are we reviewing this? Is this a preserved point or is this reviewed for something like plain errors? It's preserved. We flagged this issue in pre-trial conferences. We flagged it throughout the trial. Pre-trial conferences I don't think does it. I think if you claim a bad argument, I think you have to make an objection at the time the words are spoken to the jury that you complained of. There was an objection made at the time. It was preserved. It went to sidebar. The court recognized at the time that the argument did not have a basis, and he told the counsel to move on, but did nothing ever to instruct the jury to disregard it, to correct it. There was nothing done. Did he instruct more broadly about the purpose for which some of this evidence was to be considered? I realize not in the argument stage. I understand your point there. I can't remember, but you know the record way better than me, but it seems like I recall a limiting instruction on this evidence that was given. Even the instruction that was given, for some of it I don't think there was any limiting instruction. I don't believe there was an instruction about the arrest, but for other things, for example, the number of times that the plaintiff had been shot before, which the stipulation was he was a victim in each one of those times. There's no evidence that this is indication of his own violence at all, and the parties all stipulated to that. The court instruction was you can consider this for damages, but it doesn't say what that meant, and the argument that the expressly impromptu But you had an expert who talked about his post-traumatic stress syndrome and related to the time in prison, and as I recall, the district court said, look, I mean, if that's an argument, you've kind of opened the door to different ways that might have affected that particular diagnosis or the symptoms that come from it. And so, I mean, yeah, that's what I recall about this being shot. That was the argument that the defense made at the time, which is why the court permitted, which ended up being extensive, extensive examination about the number of times that he'd been shot before. However, when you get to closing, they never made that argument. They never suggested that. They did not mention PTSD. Instead, what they expressly said is he's been shot this many times. Those are the choices he made, and explained to the judge at sidebar when they interrupted the closing and went to sidebar, and we objected and said, they're making exactly the argument we told you they were going to make. He's a bad person. The jury should lower their damages award on that basis. The argument they expressed was he likely would have been in jail for something else. The jury can find that. It's an express argument about violence and propensity. I mean, look, I'm not saying it's the clearest. They said it in the way that is most clear that I'm saying. But why isn't that explanation at least connected to damages? I mean, you're seeking damages for being wrongfully imprisoned, and I get that. I don't know how you calculate something like that. I thought their argument was not that the damages should be reduced because he's a bad person. I thought their argument was you have to compare what the horrible situation he endured for being in prison wrongfully with what his life experience would have been had he not been in prison. Is that not a fair issue for a jury to consider in terms of what the damages were? I mean, I think in the context here, it's very clear that what they were arguing and literally the words they said, who this person is, the choices he has made, that is a character argument expressly saying to the judge he would have been in prison again. That is speculative. There's no evidence of that. The only evidence is improper propensity. And the issue is, it's not that there's no possible relevance to this. The reason that the federal rules prohibit this is because there's an understanding that people are likely to rely too much on this sort of improper inference, right? And so it's not that if you look at the cases saying why you can't introduce evidence for this purpose, it's not because it has no conceivable relevance. It's because we have made a decision that this is not a proper, the federal rules have made that this is not a proper argument. And here, the argument, if this is not improper, if there's no remedy for this, it is licensed to any defense lawyer to make this exact argument. We flagged it over and over again. It could not have been more blatant. And I want to go back at, obviously the other two issues we have are about the summary, don't relate to what happened at trial. They're about the summary judgment dismissal. And I think in both of those cases, there's clear factual determinations that were made adverse to the plaintiff. It's very clear that the district court can't do that on summary judgment. It's a little tricky here because we've got some things that are appealing from a trial and some things appealing from summary judgment. But at summary judgment, every inference has to be given to the plaintiff. And here, we've got an example of, in particular, with the Penick and Susi, everyone admits that if you, if you can find an intentional bad faith suppression of evidence that the claim has to go forward. And if you can find that they were made aware of the court order, which expressly required them to produce any evidence about Jermack Jones to the plaintiff at that time, that a jury could find that it was an intentional and bad faith suppression, that becomes a question of fact. Here, what the district court held was that the testimony of the ADA, who was, who had this court order and who had an obligation and said it was his practice, although he didn't have a specific memory, it was his practice, obviously, to inform the agencies that he's representing of their obligations under the order. And looking at the record, he believes that's what happened here, even though he doesn't have a specific memory of it. The court held that was insufficient evidence to support a jury finding that that's actually what happened. And the law is very clear that that is proper habit evidence under Rule 406. If you look at any of the cases we cited in the, in the brief, Doe v. Chapman from the Eighth Circuit, Gould v. Winstar Communications from the Second Circuit, it's crystal clear that that's sufficient evidence to support that. So that on its own was error. So returning to Judge King's initial question in terms of what remedy you seek, at least insofar as that particular argument, you are saying you were entitled to a trial, a specific trial against those two officers? Yes. So we want a trial against Ducey and Penica, and we want a trial against the City of Durham on the Monell claim. And it's a similar issue. You want two trials, or one trial? Well, what do you want? We, we want our claims reinstated for trial, as they should have been against those additional defendants. Against the two officers? The two officers and the City of Durham. Yes. Do you want, do you want two trials or one trial? I mean, exactly how it's, it's done. That would be up to the District Court. Right, it would be addressed. So you want, but you want to go to trial against the two officers? Yes. And two other officers of Durham, and against the City? And the ability for new damages. And the City, the argument about the City has to do with a witness that testified against your client who didn't, and they didn't disclose that she was a confidential informant. Yes. Undercover person for the City Police. Right. That was evidence that was actually withheld from the prosecutors too, wasn't it? It was, but there's no dispute that the Durham had substantial evidence that did impeach her testimony, and that none of that was disclosed at the time. And they would have, you'd have to prove that the City was in on it, that they have a policy of not disclosing the confidential informant information to the prosecutors? Right, so, so what the evidence... You're saying that was the policy of the City of Durham not to disclose the investigative information in the Police Department, not to disclose to the prosecuting attorney what was going on with the witnesses that he or she was calling to the witness stand? That was the evidence that, yes, that the City itself put in on summary judgment, was that it was their policy was the reason that this information... Again, it's undisputed that they had this information, and it's undisputed it wasn't disclosed. The only question is, why wasn't it disclosed? And what the City's evidence put on at the time of summary judgment was it was as a result of a City policy... Have we ever given a, gotten, given a trial on a Monell claim? Have you ever given a trial on a Monell claim? I'm sure you have. That's the policy of the City. Right. To violate somebody's constitutional right. Right. Have we ever approved a, actually a damages trial against the City for that kind of a claim? Against the City of Durham or against any municipality? Against anybody. I just don't remember one. I mean, I'm sure there have been. That's the policy. Well, sure they have. Right. I mean... Monell's a Supreme Court case, right? Yes. Yeah. But it has to be the policy. I mean, just for... It has to be the policy of the... Right. The municipal entity or the government, the white type of government that is, to violate constitutional right. And, and there's, and if you look at the Monell case law, there are multiple different ways of proving liability and each... That's what we need to talk about in Judge King's point. Your question in terms of whether we've done it before, surely the case is all over the country, which Monell policies have been used. I don't think we can question that. The question is what is required? It is required that you show that the City itself knew of this policy. What you have here is testimony of a captain who describes the policy. Is there anything else? I mean, how do you take that to say that's the policy of the City? Well, it was the City's... It was a testimony that the City itself, again, put forward on in the litigation here. And it wasn't that he came up with this decision. It wasn't the captain's testimony. He came up with a decision. It was his testimony that this was the policy of the City of Durham for over 30 years. But what the law requires is that, and I think what Judge Wynn's getting at and what the District Court found is there needs to be evidence that a policymaker approved the policy or was aware of the policy. And the District Court found that there had been no evidence of that beyond the police captain. And do you have evidence of policymakers within the City of Durham that said, yeah, not just that we keep information about confidential informants, we carefully guard it, but that we do that in a way that violates defendants' constitutional rights? And answering this question, understand what we're looking for here. It can be an express policy. It can be by custom. But you've got a captain here. What you don't have is you've got to show evidence of a final policymaker of this organized crime. So, I mean, or whatever is that, whoever is a final maker. It can't be one of the ones, I guess, that is under there that says, well, this is the policy. You've got to have evidence from that here. It's coming a little bit more concrete than that, don't you think? So, respectfully, with respect to the final policymaker, the cases that the District Court was citing, so, again, there's multiple different ways of showing Monell liability. And there's a different requirement when you're talking about a single decision. And in that case, you definitely need to show that the single decision is by someone who has final policymaking authority. When you're talking about a policy of the City, you don't look to the policymaker. You look at, is this the policy? Well, that's more the custom. Isn't it? I mean, it's one thing to say you have an express policy, or you can show it's the custom. They've been doing it. Everybody knows you've been doing it. That's different. Which you can get there both ways, but I'm not sure you get there by the single testimony from this captain. There's alternate ways of, that's true, you could also show a custom. But I think here, the evidence is, again, this is put forward by the City itself as saying the reason that this evidence, this clearly exculpatory evidence was not known to Dowdy, which is what they said. Frankly, we had a hard time believing that could be the case, but that was what their evidence was. The lead detective never learned about this extensive other involvement by this key witness in the case with other cases in the Durham Police Department that clearly undermined her testimony. They said the lead detective never knew. And the reason that we know he didn't know is because this is the way, of the City of Durham, to keep this so highly secret that it's not disclosed. I mean, isn't a fair reading of that? That we have a, as I read the testimony, I tried to read it all because it's an important issue. The testimony is generally that the Police Department guards information about confidential informants very carefully. And for good reason, right? As a general rule. And in this case, which it seemed was unusual, a confidential informant became a witness. I think that, as I read it, that probably doesn't hardly ever happen because then you get outed and bad things happen, as happened ultimately to this witness. And so, it looks to me that when the policy is to guard information carefully about confidential informants, and it struck me as probably rare that those confidential informants end up testifying. And I think that's the problem that the District Court honed in on. That we have one example here of a confidential informant that ended up being testified and the information wasn't disclosed. We may have a policy, even if you consider it a policy, even if it's enough to be that, that talks more broadly. Not about a policy that regularly happens of withholding Brady information. So, again, I think that this is looking at what is required in other types of Monell claims and confusing that for the policy claim or even a custom, if the custom is of keeping this information secret. So, if you have a claim for a pattern of unconstitutional conduct, like, for example, what was the issue in the Owens case, or you have an omission claim, or you're saying the city failed to take any reasonably necessary action, and there are different requirements. Here, and I would say also, exactly what the policy is, the interpretation of it, those are all questions of fact on this record. So, it's just like with the Sixth Circuit address in the Jackson v. City of Cleveland case, where there was a dispute. You know, the plaintiff claimed that the policy directed or permitted the withholding of certain types of exculpatory evidence. And the city disputed that. The city said, no, no, that's not what our policy requires at all. And the Sixth Circuit looked at the varying interpretations and said, there's a question of fact here about exactly what this policy requires. And so, therefore, this is a jury question. But in a situation where you're talking about the policy, which again, the evidence here is that there's evidence from which a jury could find this was the policy. And again, this is exactly what the city was arguing and what the defendants put forward as their reason why, as their defense for Dowdy, why he didn't know about this information, was that this was the way that this was handled across cases over a period of time. Is this, you said the district, is that you're talking about the prosecutor then or the police officer? I'm sorry. Who had the policy? The city of Durham. I thought you said district. If I didn't say district. I don't think so. All right. I didn't intend to. So you're saying this is a policy of the police department? Yes. And that binds the city? Yes. It's not the policy of the district attorney?  You don't claim that? No. There's no question the district attorney did not know this information or it would have been disclosed. So the issue is, and again, the testimony from city officials offered on behalf of the city was that this was the way that things were done consistently over 30 years. So based on that, that is evidence from which you could find that. Was that part of the habeas corpus proceeding? This point, this lady testifying and the failure to disclose? Was that involved in the collateral of proceedings for habeas relief? So the conviction was vacated based on new evidence, DNA evidence, and other evidence like the information from Jermac Jones. This part of it. That's what I'm asking. I don't remember whether this was raised. I don't think there was a finding of a Brady. No. All right. I can't remember. But the basis was innocence, new evidence suggesting innocence. But in the course of these proceedings, there's been no dispute. Nobody disputes that this information was held by the city of Durham, by the police department, both in files, and that there were people within the city department who knew or would have known about the witnesses' interaction in both types of cases, that she was a paid confidential informant. There's no dispute that that information was never disclosed. There's no dispute that that was a Brady violation. All right. Thank you. You've saved some time and we've given you a lot of extra time already with a lot of questions. Mr. Ellis? May it please the court. I'm actually attorney Henry Sappenfield. And to go to Judge Wynn's question. Well, I had Mr. Ellis down as the second lawyer. I'm sorry. Well, I was going to say. And had you down as the fourth lawyer. There's only three, so that makes it even worse. But you don't share it any way you want. I just apologize for giving you the wrong name. You're not being charged this time. Pardon? I was just going to say, just to give you a sense of how we had divided it up, our effort was to track the appellant's opening brief. So I was going to address the dismissal of Susie Impenica on summary judgment. I was also going to address the pardon of innocence argument made by Dowdy. And then Mr. Ellis was going to address the claims of evidence at trial. And then also the juror seven exclusion, which was the second part of our appeal. And then Mr. Gillespie is going to address the defendant, City of Durham's being dismissed on summary judgment. We're happy to handle this in another way. No, no, we're going to handle it the way you all want to handle it. So I just, you've made that outline and you may go forward. Tell me this, who do you represent? I represent, for purposes of what we're arguing here, I'm going to first represent Susie Impenica and the granting of summary judgment is to them. And then I will present defendant Dowdy's argument on appeal that the pardon of innocence was wrongfully admitted. So you represent all the three officers? Yes, your honor. Okay. And your honor, concisely because it wasn't discussed as much in the opening, Susie Impenica were dismissed on summary judgment from the claim that they violated Daryl Howard's due process rights by withholding evidence. And one of the issues that was well briefed to this court was the question of whether or not the 2011 order that instructed information to be shared with Mr. Howard's counsel was ever actually received by them. And there was a stipulation in the record that it was not served on the Durham Police Department. And there was the ADA assigned to it, Dale Morrill, who said he had no memory of serving it on them. And Susie Impenica both said that they never received it at that time. The argument made under 406 is based upon ADA Morrill's brief statement that that would have been his practice to notify and serve people. Rule 406, evidentiary purposes in the Fourth Circuit, there's not a great deal of discussion. That's the reason why I believe opposing counsel is setting to other circuits is because there's not a great deal. But I think that there is sufficient reason that Judge Schroeder properly granted summary judgment below. One, because the fact is that, one, they never received it. Two, to say that I had a practice of complying with orders, there's nothing in the order that required them to serve Susie Impenica. Mr. Morrill testified, I've never dealt with a post-conviction matter before. Susie Impenica testified, I never dealt with a post-conviction matter before. This is Terra Nova for these people who are doing their best and they have no memory of ever serving it. There's also the issue that there's no evidence of actual malice. The opposing counsel points to the fact that they are members of the Durham Police Department and that they recognize that it would be embarrassing for the Durham Police Department if there was found to be a wrongful conviction. But they did not know Dowdy or any of the investigators at the time. They were not involved in the investigation. They did not provide any evidence that there was anything indicating that they themselves would have acted out of a desire to withhold evidence. And turning very briefly to the pardon of innocence, I'm sure this court knows there was a decision issue. Well, on that, the officers did read through those trial transcripts, didn't they? Captain Penica did review the trial transcript because the actual file was not there and he did try to determine what his obligations were and what he was expected to do. And he did speak with his supervising officers because he was trying to figure out what to do, in part because the district attorney had said that they were not going to take any action on this matter. So we have to distinguish this between matters that are being actively investigated and as I said, this Terra Nova, this idea that we are going to, you know, there's post-conviction relief, but the DA is not actively involved in handling that. Well, you started to talk about our recent decision, I think in the Brown and McCollum case, that admitted or affirmed the admission of a pardon like a couple, a few days ago, right? Yes, Your Honor. But present at the time of trial. But is there something different about this one compared to that one? There is, and I was relieved to see in our brief, I believe on pages 82 and 83, where we discussed what we believe to be the key factual distinctions between the two. Briefly, in that one, the North Carolina Innocence Inquiry Commission, that is the entity that has the ability to determine innocence in North Carolina, had concluded that there was evidence of innocence in that matter. In the other one? In the other one. It was never presented to the Innocence Inquiry Commission in this matter. There's also the fact that the Innocence Inquiry Commission investigator, there was then a motion for appropriate relief that was submitted. And in that, under that, to a judge, the person who testified was investigated from the Innocence Inquiry Commission. And then Judge Cooper, I'm sorry. The governor. The governor, Governor McCrory, had all of that information available to him, and that is what he considered. As the panel said on the 8th, that pardon of innocence was basically a recapitulation of what came before. There are the deficiencies that are laid out, again, in our brief, as to why this is different. I'm happy to answer more questions about it, but I want to leave time for my co-counsel. Deputy Ewell. Thank you, Your Honor. Nick Ellis on behalf of Detective Doughty. And I want to address two of the issues that are on appeal before the court at this time. The first is going to be the plaintiff's appeal concerning their contention that the trial court erroneously admitted evidence in violation of 404B. The second issue would be Detective Doughty's appeal as to the court's declination to grant a motion to strike for cause, juror number seven. So, first of all, as far as the appeal concerning the admission of evidence that the plaintiff believes was improperly admitted, and they talk about 404B, and they cite cases that are 1983 cases that address 404B, which are completely different from the case presented to the district court. As the court knows, 404B does not cover evidence that is intrinsic to the underlying crime event incident. And that is what the trial court did in this case. In a very, very extensive motion and limiting hearing, briefing, and analysis by the court, it determined that the evidence of the plaintiff's drug use, the evidence of his working or being a drug dealer, and also the evidence of the numerous trespass arrests that had been made of him for being in few gardens in violation of the local ordinance, that all of that evidence was intrinsically intertwined with the underlying event. Which makes sense, because what was the underlying event? It was a double homicide in few gardens. There were witnesses that had... I think, counsel, that I don't mean to interrupt you. I appreciate that, and I kind of asked some questions that alluded to how that was the case. It looked like the focus of Mr. Howard's counsel was, even if that's true, when you get to closing argument, you didn't argue it for any of those issues. You made statements that indicated... I say you, it may have been you, it may not have been you. Okay, I'm not criticizing, I'm just trying to get the question out. That maybe transferred it from issues that might have been intrinsic to things that were improper. And I'm sure there are other issues, but that was a focal point. Whether or not from an admissibility standpoint, motion and limit standpoint, there were intrinsic issues, damages issues, other things, at closing argument, you kind of, they would say, went in a different direction that was improper. Yes, sir. First of all, all due respect to the plaintiff representations that have been made in this argument, about what was contained in the closing argument at trial, I would rely on the arguments as reflected in the joint appendix. So the jury instructions from the trial court, I'm going to read those verbatim, because it's those jury instructions on the issue of damages that of course set the parameters for what can be discussed. And in the instructions, the trial court said that you can award damages for pain, suffering, mental anguish, inconvenience, loss of liberty, loss of enjoyment of life. And that the court also instructed the jury that an individual's own testimony, along with the circumstances of his situation, are relevant to the argument and the consideration of damages. So what we have here, their own damages expert witness, Dr. Ortiz, had gone in and she had said, when I'm diagnosing this individual, and I conclude that he had post-traumatic stress disorder, that the first thing, or one of the things that I do, is I consider his full social and developmental history. So if I could interrupt you a little bit there, because I accept, I think it, I'm not saying how I'd rule, but I can see how the issues that are complained about relate to a damages claim. Maybe it's proper here, maybe it's not. That's not a ruling. But again, I think the question is whether it was argued as damages evidence, or whether it was argued as character evidence. Could you address, I mean, I think it, assume I think it's okay to argue why damages should be a certain amount, based on the expert testimony and all that sort of stuff. What is not okay, or at least, you know, the argument is it's not okay to say you should, this guy's a bad guy, he's done a batch of bad stuff, you should, you know, rule against him or lower his damages just because he's a bad guy. Correct. And Judge, evidence introduced by the plaintiff in his own case talked about him selling cocaine from the age of 18. Stealing drugs from the New York boys who the plaintiff contended was the actual group that murdered the Washingtons. That he was addicted to drugs. That he had trespassed in a few gardens. All of those things were from the plaintiff. All of those things were relating to his circumstances of his situation. There was an issue about the gunshot incidents. And initially the trial court found there was one incident in 1992 which led to the plaintiff being hospitalized for a month. That was intrinsic to the underlying case because that is when Detective Doughty interviewed him, was in the hospital. Then when Dr. Ortiz began to testify, or shortly before, the court revisited the issue about the relevance and probative value of the other gunshot incidents. Determined that they were admissible because they were being considered by Dr. Ortiz. And specifically in the jury instruction said that is solely related to damages. So obviously, arguing about the gunshot incidents was relevant to the consideration. Your position is your argument was not to say he was a bad guy. Your position is to say he is seeking damages. This is relevant to damages. Or in certain cases it was intrinsic to the actual case itself. That is correct. Sorry, I want to take the remaining time that I have and pivot to Detective Doughty's appeal as to juror number seven. And on that, and we've articulated and included in the briefing, her responses. And as the court knows, and we cited the Wolf case, simply because a juror says that he or she can be fair and impartial. That that does not mean that the rest of the information provided by that juror gets washed away. Juror number seven identified 13 times in her VORDI responses that indicated that she was going to have difficulty being fair to Detective Doughty. Do we review this for abuse of discretion? As far as this, your honor, that is correct. It's abuse of discretion. She testified that her significant other had been involved, I believe, in a drug case in federal court, went to court longer than they had expected. Is that going to impact your ability to be fair and partial? She says possibly. Not no, but possibly, so we're starting there. But then she says she still has feelings about that that could play a role in her ability to be a juror. They could have an effect on her on how she sees stuff. She was asked again, can you set aside that experience and decide on the evidence and law that is given by the court? Her answer, honestly, I can't say for sure. Then she goes on to say that in consideration of other events going on at the time, that she had a fear of police. She was fearful for her child. That she does not believe that police are held accountable for their actions. That innocent African American men in particular are being harmed by law enforcement when they have done no wrong. And that obviously was the claim the plaintiff was making in this case. She stated, and this is what the trial court initially did grant the request to strike her for cause. She had a sour place in her. Police like this, it is abuse of discretion, but it's manifest abuse of discretion. We get cases on jury type issues all the time. And here, repeatedly, Judge Froda asked and she responded, could you be fair and impartial? She said yes. And granted, maybe we would have ruled differently, or there could be a difference of opinions on it. But when you had that qualified manifest abuse of discretion, the court is very reticent to do anything with a matter like that. And your honor, I understand it's a high bar, and we understand that and appreciate that. But we believe we meet it because of the statements that I've just referenced. And because the court initially granted the motion. But they have to look at it in context, don't they? Yes, sir. You have to look at it in context. But I just want to close with that there was no additional voir dire information provided by the jury when the trial court reversed itself. I think if there had been additional information, we're probably not here. But because of the information that we had, that that information was sufficient to have a finding to strike her for cause, with all due respect to the trial court, we do believe that that was a manifest abuse of discretion. So we would ask that the appeal on that issue for Detective Dowdy be granted, that he be granted a new trial. And that would have the effect of undermining the verdict for damages? Yes, sir. That would be starting all over. That would be starting all over. They partly agree with you. They want a new trial also. But they don't want to get to the liability part of it. They don't want to have to revisit liability, your honor. And I think as far as the plaintiff's appeal, for the reasons we've said today and in our brief... What's the relationship then of your issue with their issue? Your argument was all about damages. They want a retrial of the damages. They just want to limit it to damages, your honor. They have not cited a single case that supports that position. The only wrongful conviction case that they do cite was one where the evidence of innocence that the plaintiff was attempting to admit was precluded. And the court did find that that prevented the plaintiff from being able to effectively prevent his evidence as to the issue of innocence. That's not here. Counsel, I hear what you're saying there on that case. Is any of the evidence that is subject to the objections that were made in the appeal... I'll call it just bad acts evidence. I'm not trying to limit it. But does any of that relate to liability at all? Or is it all related to damages? As far as that, your honor, we would contend that it does flow back to that initial liability question. Because that, of course, the liability questions were, was there a fabrication of evidence, concealment of evidence, and then was there an investigation conducted in bad faith? So to contend that, well, that information somehow was to their... If there was an error, it was to their favor. We believe that if there is going to be a restructuring of the case in consideration of what evidence is permitted, that it would require a trial on all issues. And I would defer the remainder of our time to my colleague, Mr. Gillespie. Thank you, your honor. Thank you, Mr. Ellis. Mr. Gillespie? Good morning, your honor. Good to have you with us, sir. It's good to be here, sir. The district court properly granted summary judgment for the city on plaintiff's Monell claim. You represent the city of Durham? Yes, your honor, I represent the city of Durham in this case. First of all, there was no policy authorizing non-disclosure of radio information. The declaration from Captain Kelly that's been discussed, it only addresses measures to protect the safety and security of confidential informants. It's a general practice. It does not state that braided disclosure is not required. Judge Quattlebaum, I think you focused on that in some of your questions. Accepting that, though, that would include, it might be broader than, but would include the situation we have here, correct? If you accept that as true, if you accept the fact that you guard information about confidential informants as true as we need to do on summary judgment, I know there's competing evidence on that, it would at least include situations where those confidential informants become testifying witnesses. Yes, but it would not yield to that situation. And that's the point. What do you mean now? Yeah, I'm sorry. Well, the obligation, the Brady obligation, would trump, if you will. That's what I hear you, and the law would require that to be the case. But in this case, it didn't yield. And so is your point, yeah, is your point that there's just not other examples where it didn't yield, or there's not an express policy where it's supposed to yield? Tell me what you're talking about. Both, Your Honor. Both, Your Honor. First of all, as to the first one, that there's not a policy. Paul Martin was the organized crime division commander at the time Betty Boswell was, and at the time of the trial. Of course, Betty Boswell is one who supposedly didn't disclose to Dowdy. But Martin, who helped develop the city's rules and procedures, not the city's, police department rules relating to investigations, he testified without contradiction that disclosure of Brady information was required. He said this at least five times. And you'll find these five times in the record at JA 393, 394 to 395, 397, 837, and 869. He said over and over again that disclosure of Brady information was required. So that goes back to my point that the general concept of protecting confidential informants yields to the specific of Brady information is required to be disclosed. Is that a, I hear you on there and I can see how you could put those two together and say they're consistent, but I wonder if on that issue alone we have a question of fact about whether it yields when you have what we have here, the fact that it didn't yield here. And I wonder if the more pertinent question is not whether, it is not that, but whether there's not sufficient incidence of, you know, constitutional violations that satisfy the, that would constructively indicate policy makers knew for Monell purposes. I would agree with that in two respects, your honor. You're absolutely right. First of all, there is no policy maker involvement in the practice of protecting confidential informants. There's absolutely no evidence of policy maker involvement in that, which is the sine qua non of Monell liability, number one. Number two, as to your point there, your honor, as to your point there, your honor, there must be a custom and practice which requires a persistent and widespread pattern of constitutional violations. That was stated in the Connick case. In the Connick case where there was a Brady violation, there was only one Brady violation. And the courts have said repeatedly that a single violation is not sufficient. Is that, if you have, and I know you probably don't agree with this, but if you have a policy approved by a policy maker, a final policy maker, do you agree, I think in that situation, you're not obligated to show a bunch of examples. But if you don't have evidence of a policy maker approving a policy, then there's other ways to get there, as Judge Wynn talked about earlier. And that's when you have to have more widespread examples of constitutional violations. Yes, your honor. That's exactly right. You must either have policy maker involvement or you must have repeated violations. And we don't have either of those in this case. I see I have 30 seconds left. Your honor, I'd also like to point out in the short time I have remaining that in this case, there must be an underlying constitutional violation to fasten Monell liability. In this case, the only constitutional violation, which the plaintiff is trying to lay at the city's doorstep, if you will, is a Brady violation. But in this case, the jury found that there was no Brady violation. So we don't have an underlying constitutional violation that is necessary for a Monell claim, as the Supreme Court has said in City of Los Angeles. The jury found there was no Monell violation. Your honor. No Brady violation. Yes, your honor. I'm sorry, I didn't hear your question. The jury found there was no Brady violation. Was there an interrogatory? Yes, your honor. It's the second issue. It's on page JA 3571. JA 3571, the three issues presented to the jury. Is that the verdict form? Yes, your honor. The jury verdict. They found there was fabrication. They found there was a bad faith failure to investigate. But they said no on the issue of suppression of evidence. Therefore, there's no underlying Monell. There's no underlying constitutional violation. And thus, there can be no Monell liability. Because the only issue in the plaintiff's appeal as to which they seek to hold the city liable is the alleged Brady violation. I'm out of time, your honors. Thank you. Thank you, Mr. Gillespie. Appreciate it. Starting with that, that's incorrect. The jury did not find that there was no Brady violation. There was no dispute that there was a Brady violation. The issue at trial, which was only against defendant Doughty, was whether Doughty himself knew of the exculpatory information and was responsible for suppressing it. Or whether it was other members of the DPD. And Doughty's defense, which is consistent with what was presented at summary judgment, was that he never learned about this because of this DPD policy, which kept it absolutely secret. And so there was never any dispute. And the court already found on summary judgment. What was that jury verdict? That was on whether Doughty himself was responsible for the Brady suppression. That was the question. And his argument was, I never knew about it. Responsibility. Yes. And so if consistent with that, the question is why was this Brady material, this clear Brady material, which there was no dispute, should have been disclosed, not disclosed. And the evidence was, and a jury could find, it's because of a DPD policy. Also, you could find liability either on policy with an inference that given the testimony and the information, the jury could infer that this was a policy that was officially adopted. Again, a policy can be spoken or written. Factual question, something that they testify applied for over 30 years, whether that was an official policy. It can also find it was a custom. The custom does not need to be of unconstitutional conduct. It needs to be a custom that is so widespread that you can infer constructive knowledge by the policymakers. Again, their own testimony is that this is the custom. And in this case, what we're talking about when you apply the custom, which by the way, there is no official policy of Brady compliance. So if you compare it, for example, to the Jackson v. City of Cleveland case, there they were looking at a policy that said, yes, you have to turn over Brady material, but maybe there's an exception for this one category. And a jury could interpret that to say that that's permitting Brady violations. In this case, we have the policy of keeping this information absolutely secret. There's no question that in a circumstance where the confidential informant is testifying, if you keep this absolutely secret, that is going to be a Brady violation in that case. Do you have other examples where that occurred? So the only evidence we have is that there were multiple cases in which this same witness was testifying, and there's no indication in any of those files that this information was disclosed. Although I will say, we had very limited discovery into, understandably, who the other confidential informants were. So we don't know, because we weren't even told their names because of the secrecy, who else there might have been and whether there were other violations. The only discovery we got is as to this one informant who was involved in this case. On the Susie and Penica issue, there's no question the review is de novo on the denial of a summary judgment. Same with the Monell question. And so these are fact questions for a jury to resolve. If there's disputes of fact that implicate whether there's liability, then that has to, those claims have to go forward to the jury. On the damages issue, I would urge the court to look exactly at the specific words that were spoken in closing and the specific words that were spoken to the court in defense of this argument. Specifically, what are his damages? Everybody has personal choices to make. Everybody then has to deal with the consequences of the choices they make. Specific comparison at the beginning of opening, in closing. Look at the choices that Daryl Dowdy made, the defendant in this case, and all these wonderful decisions he made. Look at the choices that Daryl Howard made in his case. That's what you should be thinking about on damages. We have it. It's in the record. It's also a long quotation in our brief. Specifically talking about the times that he was shot, which again, the stipulation was because the evidence supported that he was a, that Mr. Howard was a victim. He was an unfortunate victim of gun shootings. And we sought to keep that evidence out because of the risk that the jury would infer criminality and violent nature based on the fact that he was a victim. And they said, we're introducing this evidence for a different purpose. The judge accepted it. Then you get to closing argument. He admits that he was ambushed, shot on five different occasions, shot a total of 11 times. Those are decisions that Mr. Howard made as far as how he was going to live his life. This is an express character argument. It was absolutely improper. It was never corrected. And the standard is, and again, we're not saying that the verdict is insufficient as a matter of law. We're saying that the argument is improper. It was not corrected in any way. And under the standard, you cannot have confidence that this error did not substantially affect the verdict. And in particular, if you compare to other damages verdicts that are entered in similar cases, this verdict is far lower than the typical verdict you would get. And you can't say, you know, it's possible he would have gotten that lower verdict anyway for 21 and a half years that he spent wrongly incarcerated for crimes of which he was absolutely innocent. But the problem here is when you have this improper argument and there's no instruction by the court that you could not consider. And there's no way for a jury to know. They're not lawyers. That character evidence is improper or the propensity argument is improper if the court doesn't tell them. He did not say anything about that. He just said you can consider this evidence on damages. You cannot have confidence that that did not affect the verdict here. In terms of whether this affects the liability or damages trial, he cited two cases. Parish v. City of Elkhart, which is exactly the circumstance. Improper evidentiary decision in a wrongful conviction case. There's no question it didn't have an impact on the liability finding because it was an error against the plaintiff and the plaintiff won. They were remanded solely for a new damages trial. He also cited a case from the Fourth Circuit, I think it's Sasaki, in which the same similar issue, it's not a wrongful conviction case, but he said there's improper argument. It affected damages only. And so the remedy is to remand for a damages only trial because there's no evidence that it impacted the liability decision. So that's the appropriate remedy. That's what we're seeking here. Thank you, Ms. Hoffman. Thank you. We'll come down in Greek Council and then we'll move to the next case.
judges: Robert B. King, James Andrew Wynn, A. Marvin Quattlebaum Jr.